**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

UNITED BANKSHARES, INC., et al.,

               Plaintiffs,

v.                                 CIVIL ACTION NO.  6:10-cv-00188

ST. PAUL MERCURY INSURANCE COMPANY, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are (1) the Motion by the defendants St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, The Travelers Insurance Companies, Inc., to Dismiss the Second Amended Complaint [Docket 63]; (2) the Motion by the defendants St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, The Travelers Insurance Companies, Inc., to Transfer Venue from the United States District Court for the Southern District of West Virginia to the United States Court for the Eastern District of Virginia [Docket 65]; and (3) the Motion by the defendant Federal Insurance Company to Dismiss Count V of the Second Amended Complaint and Transfer Venue to the U.S. District Court for the Eastern District of Virginia [Docket 50].

For the reasons discussed below, the Motion by the defendants St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, The Travelers Insurance Companies, Inc., to Dismiss the Second Amended Complaint [Docket 63] is **GRANTED** in part and **DENIED**

in part.  The Motion by the defendants St. Paul Fire and Marine Insurance Company, St. Paul

Mercury Insurance Company, The Travelers Insurance Companies, Inc., to Transfer Venue from the

United States District Court for the Southern District of West Virginia to the United States Court

for the Eastern District of Virginia [Docket 65] is **DENIED**.  The Motion by the defendant Federal

Insurance Company to Dismiss Count V of the Second Amended Complaint and Transfer Venue to

the U.S. District Court for the Eastern District of Virginia [Docket 50] is **GRANTED** as it pertains

to dismissing Count V of the Second Amended Complaint against the defendant Federal Insurance

Company and **DENIED** as it pertains to transferring venue to the Eastern District of Virginia.

## I.     Background

The plaintiffs, United Bankshares, Inc. ("United Bankshares"), and United Bank ("United

Virginia"), purchased loss insurance in the form of a financial institution bond from the defendant

insurance company, St. Paul Mercury Insurance Company ("St. Paul Mercury").  The plaintiffs also

purchased a second financial institution bond, which provided excess loss insurance, from the

defendant insurance company, Federal Insurance Company ("Federal").  After purchasing these

insurance bonds, the plaintiffs lent several million dollars to a borrower.  The borrower subsequently

defaulted and the plaintiffs submitted claims of loss under these insurance policies to both St. Paul

Mercury and Federal.  Nine months later, the plaintiffs filed the instant diversity action against all

of the St. Paul defendants and Federal.

### A.     Facts

This case centers around claims by a bank against its insurance companies.  The plaintiff,

United Virginia, is a banking corporation organized under the laws of Virginia and the plaintiff,

United Bankshares, the corporate parent of United Virginia, is a bank holding company with its principal place of business in West Virginia.

The defendants are all insurance companies.  The defendant, St. Paul Mercury, is a Minnesota corporation headquartered in Minnesota.  St. Paul Mercury is a wholly-owned subsidiary of St. Paul Fire and Marine Insurance Company ("St. Paul Fire"), which, in turn, is a wholly-owned subsidiary of the Travelers Insurance Companies ("Travelers"). The defendant, St. Paul Fire, is also a Minnesota corporation headquartered in Minnesota.  The defendant, the Travelers, is a Minnesota Corporation headquartered in New York.  St. Paul Mercury is a wholly-owned subsidiary of St. Paul Fire, and St. Paul Fire is a wholly-owned subsidiary of Travelers.   The court will hereinafter refer to Travelers, St. Paul Fire, and St. Paul Mercury collectively as the "St. Paul Defendants." The defendant, Federal is an Indiana corporation.[1]

In November 2008, the plaintiff, United Bankshares purchased a financial institution bond ("the bond") from St. Paul Mercury.  The bond was issued to United Bankshares and stated that United Bankshares's subsidiaries were "Named Insured" under the bond.  The bond was effective for a one-year term beginning November 1, 2008, and covered the plaintiffs for losses discovered by the insured of up to $15 million subject to a $750,000 deductible.  The bond contained insuring clauses, detailing which specific events and losses would be covered.

In February 2009, the plaintiff, United Bankshares, purchased a financial institution excess bond ("the excess bond") from the defendant, Federal.  The excess bond was effective for a one-year term beginning November 1, 2008, and provided coverage for losses which "would have been paid

---

[1] The plaintiffs originally named the Chubb Corporation as defendants.  The plaintiffs voluntarily dismissed the Chubb Corporation [Docket 61].

under the Primary Bond [the bond] but for the fact that the loss exceeds the Deductible Amount." The excess bond covered the plaintiff for additional losses up to $5 million in excess of losses covered by the financial institution bond.

On December 13, 2007, Osama El-Atari visited United Virginia's offices in Vienna, Virginia to discuss applying for a $5 million loan to finance the purchase of two "Original Steakhouse & Sports Theater" franchises. Mr. El-Atari applied for these loans on behalf of two companies which he owned. Mr. El-Atari personally guaranteed the loan and provided two Lincoln Benefit Life Company life insurance policies which he claimed to own to United Virginia as security for the loan. United Virginia was contacted by an individual who identified himself as an agent with the Lincoln Benefit Life Company who helped United Virginia perfect the alleged assignments. After United Virginia reviewed the loan paperwork, United Virginia closed on the loan on December 28, 2007.

In April 2008, Mr. El-Atari applied for a second loan of $900,000, to be secured by the same life insurance policies. After reviewing the loan paperwork and new policy statements from Lincoln Benefit Life Company, United Virginia approved the loan on April 17, 2008. In November 2008, Mr. El-Atari contacted United Virginia to discuss applying for a third loan of $12 million to finance potential new investment projects. Mr. El-Atari applied for this loan on behalf of another of his businesses. As with the previous loans, Mr. El-Atari offered to assign a life insurance policy that he owned as security for the loan. United Virginia reviewed copies of this policy and asked for information about the funds used to purchase this third policy. A man purporting to be an attorney contacted United Virginia and stated that he advised Mr. El-Atari to invest the proceeds from selling his family's real estate into life insurance policies for estate planning purposes. After reviewing this information, United Virginia closed on the loan on November 25, 2008.

On May 1, 2009, United Virginia was contacted by Access National Bank and informed that Mr. El-Atari had attempted to borrow money using fraudulent life insurance policies as collateral and the Federal Bureau of Investigation had been notified.  On May 6, 2009, United Virginia discussed the matter with Mr. El-Atari, who admitted that the life insurance policies were fraudulent. Mr. El-Atari said that he hoped to repay the loans to United Virginia but fled the country shortly thereafter.  Mr. El-Atari did not make any additional payments on the three loans.

In early May 2009, after determining that all of the life insurance policies offered as collateral were either fraudulent or without value, United Virginia submitted its proof of loss to the defendants.  Over the next nine months, the United Virginia communicated with the defendants and provided documentary evidence of their losses.  On February 25, 2010, the plaintiffs filed the instant diversity action in the Southern District of West Virginia.  On March 3, 2010, St. Paul Mercury denied United Virginia's claims in a written letter.

In 2009, Mr. El-Atari was indicted on bank fraud charges in both the Eastern District of Virginia and the Northern District of Ohio.  Mr. El-Atari was arrested in Texas on February 1, 2010 and transferred to the Eastern District of Virginia.  The FBI investigation into Mr. El-Atari revealed that a United Virginia employee had  assisted Mr. El-Atari in defrauding United Virginia.  After obtaining this information, the plaintiffs' counsel submitted "supplemental proof of loss" to the defendants on April 30, 2010, which contained additional information about the forgery of documents related to the loans.   Mr. El-Atari ultimately pled guilty to bank fraud and money laundering in August 2010 and is currently incarcerated.

**B.     Procedural History**

The plaintiffs filed the instant diversity action in this court on February 25, 2010.  The Complaint alleged several claims against several defendants including a claim for declaratory relief, a breach of contract claim, and a claim under the West Virginia Unfair Trade Practices Act.  The court will refer to this action as the first-filed action.  On March 12, 2010, the defendant, St. Paul Mercury, filed a diversity action against the plaintiffs in the United States District Court for the Eastern District of Virginia, seeking declaratory judgment.  The court will refer to this action as the second-filed action.

The plaintiffs in the first-filed action attacked the second-filed action in both districts.  First, the plaintiffs, filed a Motion to Dismiss, Stay, or Transfer Venue in the Eastern District of Virginia on April 1, 2010.  Second, the plaintiffs filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction Ordering Defendants to Refrain from Prosecuting Parallel Litigation in the second-filed action on April 14, 2010.  On April 21, 2010, this court declined to issue an injunction, noting that "waiting for Judge Hilton to rule on the plaintiffs' Motion to Dismiss, Stay, or Transfer is the proper course."  On April 27, 2010, after a hearing on the Motion, Judge Hilton of the Eastern District of Virginia transferred the second-filed action to this district and the two actions were consolidated into the present case.

On August 19, 2010, the plaintiffs filed their Second Amended Complaint ("SAC"), which contained the following claims: (1) declaratory judgment under Clause A of the bond against the defendants St. Paul Mercury and Federal; (2) declaratory judgment under Clauses D and E of the bond against the defendants St. Paul Mercury and Federal; (3) breach of contract contained in Clause A of the bond against the defendants St. Paul Mercury and Federal; (4) breach of contract contained in Clauses D and E of the bond against the defendants St. Paul Mercury and Federal; (5) violations

of West Virginia's Unfair Trade Practices Act against all named defendants; (6) tortious interference with contract against the defendants St. Paul Fire and Travelers; (7) aiding and abetting tortious interference with contract against the defendants St. Paul Fire and Travelers. The defendants have filed a number of motions in response to the SAC, all of which argue for dismissing the action or, alternatively, transferring venue to the Eastern District of Virginia. All of the defendants' Motions are now ripe for disposition and the court will consider each in turn.

II.     **Motion by St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, The Travelers Insurance Companies, Inc., to Dismiss the Second Amended Complaint**

   A.     **Motion to Dismiss United Bankshares as a Real Party in Interest**

         1.     **Standard**

"Federal Rule of Civil Procedure 17(a) provides that '[e]very action shall be prosecuted in the name of the real party in interest.'" *Coliseum Cartage Co., Inc. v. Rubbermaid Statesville, Inc.*, 975 F.2d 1022, 1024 (4th Cir. 1992). The Fourth Circuit has defined the real party in interest as "a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Id.* (quoting *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir.1973)). For a federal court sitting in diversity, "[w]hile the question of in whose name the action must be prosecuted is procedural, and thus governed by federal law, its resolution depends on the underlying substantive law of the state." *Virginia Elec. & Power Co.*, 485 F.2d at 83. Here, the inquiry is whether United Bankshares has a significant interest in the litigation and could recover from the defendants under West Virginia law.

         2.     **Discussion**

The defendants contend that United Bankshares is not a real party in interest because United Virginia, not United Bankshares, suffered the losses listed in the complaint and both parties cannot simultaneously recover.[2]  In response, the plaintiffs assert that United Bankshares is a party in interest because "United [Bankshares's] economic well-being (including its ability to pay its shareholder dividends) is directly tied to that of its subsidiaries," and, accordingly, United Bankshares has an actual interest in protecting United Virginia from suffering losses.

Under West Virginia law, "a party with whom a contract is made has a vested legal interest conferring the right to sue for its enforcement."  *Hous. Auth. of City of Bluefield v. E.T. Boggess*, 233 S.E.2d 740, 745 (W. Va. 1977).  United Bankshares purchased the bonds and the bonds were issued specifically to United Bankshares.  United Bankshares, therefore, possesses the right to bring suit to enforce the bonds.  United Bankshares's interest in this litigation, namely enforcing its contractual rights and recouping losses suffered by a wholly-owned subsidiary, are significant.  In addition, to the extent that United Bankshares contracted with the defendants to insure United Virginia for losses, United Bankshares is a real party in interest as a party "with whom . . . a contract has been made for another's benefit."  Fed. R. Civ. P. 17(a)(F).  Accordingly, I **FIND** that United Bankshares is a real party in interest.

### B.   Motion to Dismiss the Plaintiffs' Claims for Failure to State a Claim Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

---

[2] The effect of dismissing United Bankshares from this litigation would be to leave United Virginia as the sole remaining plaintiff in this litigation.  While this would not impact diversity jurisdiction in the case, the change in parties may impact the pending motion to transfer venue to the Eastern District of Virginia because United Virginia is deemed a corporate citizen of Virginia, not West Virginia.  "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a *foreign plaintiff's* choice deserves less deference."  *Piper Aircraft v. Reyno*, 454 U.S. 235, 256 (1981) (emphasis added).

### 1.      Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. As the Supreme Court recently reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50. Moreover, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 1949 (internal quotation marks omitted). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id*. In other words, a complaint must contain enough facts to "nudge[ ][a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

The *Iqbal* court suggested a two-pronged inquiry to determine if the complaint survives a motion to dismiss as set forth by *Iqbal*, which I will follow here.  First, I will identify any pleadings that are not entitled to the assumption of truth because they are conclusory and unsupported by factual allegations.  *See Iqbal*, 129 S. Ct. at 1949-50.  Where there are well-pleaded factual allegations, I will assume the veracity of those facts and then determine whether they plausibly give rise to a valid claim for relief.  *See id.*

### 2.    Discussion

#### a.    *The Plaintiffs' Breach of Contract Claim*

The defendants assert that the plaintiffs fail to state a claim for breach of contract because the plaintiffs do not specifically cite to any provisions in the bond that the defendants breached.  Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," and under the current federal rules a complaint must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" to survive a motion to dismiss.  *Iqbal*, at 1949-50 (internal citations omitted).

Applying the two-part inquiry set forth in *Iqbal*, the plaintiffs' breach of contract claim is properly alleged in the record.  The plaintiffs undisputedly purchased insurance bonds from the defendants and the defendants have not settled the plaintiffs' claims.  Assuming the veracity of these facts, the plaintiffs have stated a plausible claim for breach of contract.  The defendants have not cited any cases applying any heightened pleading standards to breach of contract claims.  Accordingly, the court **FINDS** that the plaintiffs have stated a claim for relief for breach of contract.

The court **DENIES** the defendants' Motion as it pertains to dismissing Counts III and IV of the SAC.

### b.    *The Plaintiffs' West Virginia UTPA Claims*

The defendants assert that the plaintiffs fail to state a claim for violations of the West Virginia Unfair Trade Practices Act ("UTPA").  To bring a claim under the UPTA, a plaintiff must show "[m]ore than a single isolated violation of W. Va. code, 33-11-4(9)," however, "multiple violations of W. Va. code, 33-11-4(9), occurring in the same claim would be sufficient."  *Dodrill v. Nationwide Mut. Ins. Co.* 491 S.E.2d 1, 12 (W. Va. 1996).  The West Virginia Supreme Court of Appeals set out the standard as follows:

> Accordingly, we hold that to maintain a private action based upon alleged violations of W. Va. Code § 33-11-4(9) *in the settlement of a single insurance claim*, the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code § 33-11-4(9), that the violations arise from *separate, discrete acts or omissions in the claim settlement*, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a 'general business practice' and can be distinguished by fair minds from an isolated event.

*Id.* at 13 (emphasis added).  The Court held that the insurance company's repeated failure to settle Mr. Dodrill's claim, despite repeated contact with Mr. Dodrill after liability had become reasonably clear, supported a jury verdict that the insurance company's actions were a general business practice in violation of the UTPA.

Here, the plaintiffs allege that the defendants wrongfully denied the plaintiffs' claims, failed to issue a timely coverage decision, and refused to settle the plaintiffs' claims brought under three separate insuring clauses in the bond.  Under the first prong of the *Iqbal* inquiry, these allegations are sufficient to state claims for violations of multiple sections of the UTPA based on repeated acts

by the defendants over nearly one year.  The plaintiffs have alleged "separate, discrete acts or omissions, each of which constitute violations of different sub-paragraphs of W. Va. Code § 33-11-4(9)." *Dodrill*, 491 S.E.2d at 12-13.  These allegations are also factually sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, the court **FINDS** that the plaintiffs have stated a claim under the UTPA upon which relief can be granted.  The court **DENIES** the defendants' Motion as it pertains to dismissing Count V of the SAC against the St. Paul defendants.

> c.    *The Plaintiffs' Tortious Interference and Aiding and Abetting Claims*

West Virginia recognizes a cause of action for tortious interference with contract.  "To establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." *Hatfield v. Health Mgmt. Assoc. of West Virginia*, 672 S.E.2d 395, 403 (W. Va. 2008).  The plaintiffs assert that the defendants St. Paul Fire and Travelers tortiously interfered with the contract between the plaintiffs and St. Paul Mercury, but do not assert a single fact in support of "an intentional act of interference."  The plaintiffs seem to assume that the defendants *must* have interfered with the contract because they are St. Paul Mercury's corporate parents.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. 544, 550, 557).  The plaintiffs have not pleaded a factual predicate in support of their allegation that the defendants tortiously

interfered with the contract between the plaintiffs and St. Paul Mercury, and this court will not infer one from the mere existence of a corporate relationship.[3]   Accordingly, this court **FINDS** that the plaintiffs have failed to state a claim for tortious interference upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).   The court **GRANTS** the defendants' Motion to Dismiss Count VI of the SAC and **ORDERS** that Count VI of the SAC be dismissed.

West Virginia law recognizes a cause of action for aiding and abetting tortious conduct.   "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."   *Clark v. Milam*, 847 F. Supp. 409, 419 (S.D. W. Va. 1994).   Count VII of the SAC asserts that the defendants St. Paul Fire and Travelers are liable for lending "substantial assistance and encouragement" to St. Paul Mercury's "wrongful acts and/or omissions as described in this Second Amended Complaint."   (SAC, at 27-28.)   The plaintiffs identify neither an underlying tort by St. Paul Mercury, nor any facts indicating "substantial assistance" by the defendants St. Paul Fire and Travelers.   A complaint will not survive a motion to dismiss "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. 544, 557).   Accordingly, the court **FINDS** that the plaintiffs have failed to state a claim against the defendants St. Paul Fire and Travelers upon which

---

[3] The court also notes that courts in West Virginia have "looked to the factors listed in the Restatement (Second) of Torts," in evaluating a claim for tortious interference. *C.W. Dev., Inc. v. Structures, Inc. of West Virginia*, 408 S.E.2d 41, 44 (W. Va. 1991).   Courts in West Virginia have held that defendants are not liable for tortious interference if they show "financial interest in the induced party's business." *Id.* at 44.   The defendants Travelers and St. Paul Fire, as the corporate parents of St. Paul Mercury, had such a financial interest in St. Paul Mercury's business and would not be liable for any interference with the contract.

relief can be granted under Count VII of the SAC.  The court **ORDERS** that Count VII of the Second Amended Complaint be dismissed.

### C.    Motion to Dismiss the Plaintiffs' Declaratory Judgment Claims

#### 1.    Standard

"[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. North America, Inc. v. CLM Equip. Co.,* 386 F.3d 581, 592 (4th Cir. 2004) (internal citations omitted).  Here, the defendants challenge only the first jurisdictional prerequisite of an actual controversy.  Jurisdiction in this case is based on diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332.  "For a controversy to exist for declaratory judgment purposes, however, the situation need not present a federal cause of action; if the parties are diverse, a federal court may possess subject matter jurisdiction over a state-law contract dispute." *Id.* at 593.

#### 2.    Discussion

The defendants contend that no state-law contract dispute exists because the plaintiffs filed the complaint *before* the defendants denied their claim of loss.  The defendants do not, however, cite any West Virginia law on the existence of a state-law contract dispute.  Under West Virginia Law, "an insurance carrier has a duty, once a first-party policyholder has submitted proof of a loss, to promptly conduct a reasonable investigation of the policyholder's loss based upon all available information." *Miller v. Fluharty*, 500 S.E.2d 310, 320 (W. Va. 1997).  West Virginia public policy

-14-

encourages "the speedy payment on the policyholder's insurance contract, regardless of when and how the policyholder makes a claim." *Id.* at 321. Courts in West Virginia do not distinguish between "a policyholder who makes a pre-suit demand" and "a similarly situated policyholder who makes a post-suit demand" in insurance cases. The plaintiffs filed the instant suit nearly nine months after filing a claim with the defendant insurance companies and providing documentary evidence of their claim. When the plaintiffs filed suit, they had not received any payments from the defendants. Under West Virginia law, the plaintiffs were not required to wait until the defendants formally denied their claims before bringing an action to enforce the insurance bonds. The plaintiffs' complaint alleged this state-law dispute, which constituted an actual controversy. Accordingly, this court **FINDS** that it has jurisdiction over the plaintiffs' declaratory judgment claims. The court **DENIES** the defendants' Motion to dismiss the plaintiffs' declaratory judgment claims.

### III.   Motion by Federal Insurance Company to Dismiss Count V of the Second Amended Complaint[4]

The defendant, Federal, asserts that the plaintiffs' UTPA claims in Count V should be dismissed under Federal Rule 12(b)(6) for failing to state a claim. As an excess carrier, Federal's position in this litigation is distinguishable from that of the St. Paul defendants because Federal's duty to pay the plaintiffs' claims only applies to those losses which "would have been paid under

---

[4] This Motion raises arguments first, regarding dismissing Count V of the SAC, and, second, regarding transferring this action to the Eastern District of Virginia. Federal joined the St. Paul defendants' Motion to Transfer [Docket 65]. Federal does not raise any unique arguments regarding transfer in its motion. Accordingly, the court will address Federal's arguments regarding dismissing of Count V of the Complaint in this section and will treat all of the defendants' arguments regarding transferring this action in the following section.

the Primary Bond but for the fact that the loss exceeds the Deductible Amount." Federal is only liable to the plaintiffs for losses that are, in fact, covered by the primary bond, and in excess of the coverage provided under the primary bond. The plaintiffs assert that Federal failed to submit a timely coverage opinion and contend that this violated the UTPA. A plaintiff must show "[m]ore than a single isolated violation of W. Va. code, 33-11-4(9)." *Dodrill* 491 S.E.2d at 12-13. While multiple violations of the provisions of the UTPA in the settling of a single claim are sufficient, the plaintiffs assert that Federal violated *only one* of the provisions. This sole allegation is not sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 129 S. Ct. at 1949, because a plaintiff must allege "separate, discrete acts or omissions in the claim settlement." *Dodrill,* 491 S.E.2d at 12. This sole allegation against Federal stands in sharp contrast to the plaintiffs' UTPA claims against the St. Paul defendants. In support of their allegations that the St. Paul defendants violated the UTPA, the plaintiffs detail extensive communications regarding coverage under the bond, evidentiary proof of losses, and an ultimate denial of the plaintiffs' claims. Accordingly, the court **FINDS** that the plaintiffs have failed to state a claim against Federal for violating the UTPA. The court **GRANTS** Federal's Motion to Dismiss Count V of the SAC and **ORDERS** that Count V of the SAC be dismissed as to Federal.

## IV.     Motion to Transfer Venue to the United States District Court for the Eastern District of Virginia

### A.     Standard

The defendants seek transfer to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). That statute authorizes a district court to transfer a case to another judicial district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The

decision whether to transfer a matter to another district is committed to the sound discretion of the district court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Brock v. Entre Computer Ctrs, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991). In deciding whether to transfer a case under § 1404(a), a court must first determine whether the action "might have been brought" in the transferee district. If so, then the court must "weigh in the balance a number of case-specific factors.'" *Vass v. Volvo Trucks, N. Am., Inc*., 304 F. Supp. 2d 851, 857 (S.D. W. Va.2004) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "Factors commonly considered in ruling on a transfer motion include:  (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses;  (4) the availability of compulsory process; (5) the possibility of a view;  (6) the interest in having local controversies decided at home; and (7) the interests of justice." *Id.* (quoting *AFA Enter., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994)).

The party bringing a motion for transfer – here, the defendants– bears the burden of showing the propriety of transfer. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc*., 599 F.3d 102, 113-14 (2d Cir.2010)   The plaintiff's choice of forum is accorded great weight. *Vass*, 304 F. Supp. 2d at 858 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Thus, "a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff." *AFA Enter.*, 842 F. Supp. at 909; *see Van Dusen*, at 622.

**B.** **Discussion**

As the parties do not dispute that this action *could* have been properly brought in the Eastern District of Virginia, my inquiry focuses on whether the defendants have met their burden of establishing that transfer to the Eastern District of Virginia is proper.[5]

The heart of the dispute is that the defendants have failed to pay the plaintiffs' insurance claims under the insurance contracts. The plaintiff, United Bankshares, a West Virginia corporation, entered into these contracts with the defendants in West Virginia.[6] Both of the bonds were issued to United Bankshares and delivered to United Bankshares's offices in Parkersburg, West Virginia. As discussed above, United Bankshares is a real party in interest in this litigation. *See supra* Section II.A; *see also* Fed. R. Civ. P. 17(a)(1)(F). The defendants assert that venue in the Eastern District of Virginia is more convenient because the underlying transactions and events, including the disbursement of and default on the loans, took place in the Eastern District of Virginia, a majority of the witnesses and evidence are located in or around the Eastern District of Virginia, a number of related criminal and civil matters took place in Virginia, and because discovery in this case will occur in the Eastern District of Virginia.

### 1.    Ease of Access to Sources of Proof

The first factor, ease of access to sources of proof, weighs against transferring the action. The parties agree that the "vast majority of relevant documents" are in the possession of United

---

[5]Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000. Accordingly, venue is governed by 28 U.S.C. § 1391(a), and the Eastern District of Virginia would be a proper venue for this action because a "substantial part of the events or omissions giving rise to the claim" occurred in the Eastern District of Virginia. *See* 28 U.S.C. § 1391(a).

[6] The SAC asserts that the plaintiffs purchased the bonds through Wells Fargo insurance of West Virginia. None of the defendants contest the assertion that the bonds were purchased in West Virginia.

Bankshares in West Virginia.  (Defs.' Reply in Support of Motion to Transfer, at 5 (quoting Pls.' Memo Opposing Motion to Transfer, at 16.))  As United Bankshares is a party to this action, the defendants' analogy to a forum-shopping plaintiff who ships documents to local counsel in its chosen forum is inappropriate.  Here, United Bankshares has the records at its West Virginia headquarters.  The defendants assert that the three "original" copies of the fraudulent life insurance policies are believed to be held by the FBI in Virginia and denying the defendants access to these policies "could constitute reversible error."  In spite of these bold assertions, the defendants do not even raise an argument, much less any evidence, that these documents would only be available in the Eastern District of Virginia or that their location in any way supports transferring this action.

### 2.    The Convenience of Parties and Witnesses

The second factor, the convenience of parties and witnesses, weighs slightly against transferring this action.  "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience."  *Samsung Elec. Co, Ltd., v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2008).  Additionally, "the moving party must demonstrate whether that witness is willing to travel to a foreign jurisdiction," because "merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witnesses and the necessity of compulsory process."  *Id.* at 719 (internal citations omitted).  In the present case, the defendants have identified several non-party witnesses who reside in or near the Eastern District of Virginia.  The defendants specifically assert that four of these witnesses, Mr. El-Atari's life insurance agent, Mr. El-Atari's former assistant, and United Virginia's closing counsel, are unlikely to appear voluntarily.  The

defendants have not demonstrated that the Southern District of West Virginia is an inconvenient forum for any other non-party witness, most notably Mr. El-Atari or Mr. Gezachew.  In addition, the plaintiffs have agreed to make all United Virginia employees available to provide live testimony in West Virginia.  The "convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue." *Id.* at 719.  Accordingly, I give strong consideration to the inconvenience of a West Virginia forum for the "hostile" non-party witnesses in this case.  Overall, however, considering the witnesses most relevant to this action, the  defendants have not met their burden and shown that the convenience of the witnesses mandates transfer.

Regarding the convenience of the parties, West Virginia is the more convenient forum for the plaintiffs. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co., v. Reyno*, 454 U.S. 235, 255-56 (1981).  The defendants assert that the Eastern District of Virginia is a more convenient forum because "virtually all witnesses" and sources of proof are located in there.  As discussed above, the defendants' arguments that they will have greater access to sources of proof in Virginia are unpersuasive.  Similarly, the defendants have not established that "virtually all" of these witnesses are unwilling to appear voluntarily in this action in West Virginia.  It may be more expensive for the defendants to litigate this action in the Southern District of West Virginia because of the costs associated with taking depositions in the Eastern District of Virginia or providing travel expenses for witnesses.  Nonetheless, a plaintiff's choice of forum is given great weight and a transfer motion will not be granted where it "would merely shift the inconvenience from the defendant to the plaintiff." *AFA Enter., Inc.*, 842 F. Supp. at 909.  Overall, the defendants have not met their burden on the second element.

### 3.    The Cost of Obtaining the Attendance of Witnesses, the Availability of Compulsory Process

The defendants provided an extensive list of witnesses, many of whom reside either in or around the Eastern District of Virginia.  While the defendants have not established that it would be "inconvenient" for many of these witnesses to appear in the Southern District of West Virginia, it will undoubtedly be more expensive for the parties to obtain the attendance of witnesses who will have to travel to attend the trial.  The defendants have met their burden of showing that the cost of obtaining the attendance of witnesses  weighs slightly in favor of transferring the action

Similarly, the availability of compulsory process also weighs in favor of transferring the action.  An issuing court "must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(3)(A)(ii).  Pursuant to this rule, several non-party witnesses would not be subject to this court's subpoena power.  The defendants assert that the lack of compulsory process is particularly relevant regarding the "hostile" nonparty witnesses described above, as their live testimony is essential to the defendants' case.

Both of these factors weigh in favor of transferring the action.  I note, however, that it is difficult to determine how heavily either of these factors tilt in favor of transfer.  First, the defendants have not demonstrated, with the exception of the four hostile witnesses described above, that "videotaped deposition testimony will be inadequate, and that live testimony is critical." *Samsung*, 386 F. Supp. 2d at 719.  Second, the defendants have not articulated, with the exception of the same four witnesses, the extent that compulsory process will be necessary to obtain relevant witness testimony.

-21-

**4.      The Interest in Having Local Controversies Decided at Home and the Interests of Justice**

Both the interest in having local controversies decided at home and the interests of justice weigh against transferring the action.  A West Virginia corporation brought this case in West Virginia to enforce a contract executed in West Virginia.  West Virginia has an interest in vindicating the rights of its corporate citizens and in ensuring the enforcement of contracts executed under state law.

In considering the "interest of justice" in determining whether to transfer venue, a court "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the "'interest of justice.'"  *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).  "Judicial economy and the avoidance of inconsistent judgments are among the principal elements of systemic integrity."  *Samsung*, at 720.

The defendants make several misplaced arguments in asserting that the interest of justice supports transferring the action.  First, the defendants detail the fourteen related proceedings in federal and state court in Virginia, including criminal cases against Mr. El-Atari and Mr. Gezachew, bankruptcy proceedings against Mr. El-Atari, and actions by United Virginia against Mr. El-Atari in the Circuit Court of Loudon County, Virginia, to enforce promissory notes.  While these proceedings all involve the overall fraud scheme perpetrated by Mr. El-Atari, these cases involve different parties and distinguishable issues of fact and law from those in the present case.  The proceedings may be "related" under the common definition of the word, but they are not  "related" for the purpose of deciding whether to transfer an action in federal court for the interest of justice.

Second, the defendants' arguments regarding the second-filed action in the Eastern District of Virginia are not relevant to the present motion to transfer venue.  The defendant, St. Paul Mercury, who voluntarily brought this second-filed action, now attempts to use it as evidence of duplicitous litigation  in the Eastern District of Virginia.  A defendant's voluntary initiation of a second suit does not mandate transferring this action to the Eastern District of Virginia.  Moreover, the defendants have simply reasserted all of the facts linking this case to the Eastern District of Virginia in an attempt to show that Judge Hilton's decision to transfer was "clearly erroneous."  The appropriate inquiry at present is whether the defendants have met their burden *in this case* of showing that transfer is appropriate, not whether Judge Hilton properly transferred the second-filed action to this court.  The defendants seek reconsideration of the same facts under this final factor, the interests of justice.  I have, however, already considered these facts under the relevant factors, discussed above and I do not reconsider them here.  The parties entered into a contract in West Virginia, and a West Virginia based plaintiff chose to sue on this contract in its home state.  The interests of justice weigh heavily against transferring this action from the plaintiffs' chosen forum.

### C.    Conclusions - Motion to Transfer

Having considered all of the public and private interest factors, I conclude that justice is best served by having this case proceed in the Southern District of West Virginia.  Accordingly, the defendants' Motion to Transfer Venue to the Eastern District of Virginia is **DENIED**.

## V.    Conclusions

For the reasons discussed above, the Motion by the St. Paul defendants to Dismiss the SAC [Docket 63] is **GRANTED** in part and **DENIED** in part.  The Motion by the St. Paul defendants to Transfer Venue from the United States District Court for the Southern District of West Virginia to

the United States Court for the Eastern District of Virginia [Docket 65] is **DENIED**.  The Motion

by the defendant Federal to Dismiss Count V of the SAC and Transfer Venue to the U.S. District

Court for the Eastern District of Virginia [Docket 50] is **GRANTED** as it pertains to dismissing

Count V of the SAC against the defendant Federal and **DENIED** as it pertains to transferring venue

to the Eastern District of Virginia.

The court **ORDERS** that Counts VI and VII of the plaintiffs' SAC be dismissed as to all

defendants.  The court **ORDERS** that Count V of the plaintiffs' SAC be dismissed only as to the

defendant Federal Insurance Company. Left remaining in this court are Counts I - IV of the

plaintiffs' SAC against all of the defendants named therein and Count V of the plaintiffs' SAC

against the St. Paul defendants (St. Paul Fire and Marine Insurance Company, St. Paul Mercury

Insurance Company, The Travelers Insurance Companies, Inc.).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:        November 4, 2010

Joseph R. Goodwin, Chief Judge